FILED
JUN 3 0 2003
LARRY W. PROPES, CLERK
COLUMBIA, S.C.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
Spartanburg Division

**Civil Action No.** 7 03 2141 20

| | | |
|---|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, Plaintiff, | ) | COMPLAINT |
| | ) | (**Jury Trial Demanded**) |
| vs. | ) | |
| Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., Defendants. | ) | |

## Introduction

This is an antitrust case brought by the Spartanburg Regional Healthcare System, on behalf of itself and other purchasers of hospital products, against Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., (collectively referred to as Hill-Rom), based on the Sherman and Clayton antitrust acts. The gravamen of the complaint is that Hill-Rom has used its monopoly power in the regular hospital bed market to attempt to monopolize and to tie the sales of specialty hospital beds. Plaintiff class seeks injunctive and monetary relief, as well as attorneys fees and costs.

## I. PARTIES

1. Plaintiff Spartanburg Regional Healthcare System ("SRHS"), is a quasi-governmental, not for profit, entity in the business of providing comprehensive healthcare. Plaintiff's main business location is in Spartanburg, Spartanburg County, South Carolina.

2. Defendant Hillenbrand Industries, Inc. ("Hillenbrand") is an Indiana corporation with its principal place of business in Batesville, Indiana. Hillenbrand can be served with process by serving its registered agent, Mark R. Lindenmeyer, at 1060 State Route 46 E., Batesville, Indiana 47006. Hillenbrand is a conglomerate and owns a number of companies, including Hill-Rom Company, Inc. and was the owner of Hill-Rom, Inc.

3. Defendant Hill-Rom Company, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana. Hill-Rom can be served with process by serving its registered agent, CT Corp. System, 75 Beattie Place, Two Shelter Centre, Greenville, SC. Hill-Rom Company, Inc. is, upon information and belief, a wholly owned subsidiary of Hillenbrand Industries. Hill-Rom Company, Inc. is believed to the successor in interest of SSI Medical Services, Inc., a South Carolina corporation. Hill-Rom Company, Inc. is in the business of manufacturing and selling hospital beds. Hill-Rom Company, Inc., upon information and belief, also manufactures and sells hospital room headwall units and other in-room products.

4. Defendant Hill-Rom, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana and can be served with process by serving its registered agent, Mark R. Lindenmeyer at 700 State Route 46 F., Batesville, Indiana 47006. Hill-Rom, Inc. is a wholly owned subsidiary of Hillenbrand Industries, Inc.

## II. JURISDICTION AND VENUE

5. Subject matter jurisdiction over this complaint is conferred on this Court by § 4 and § 15 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U SC. § 1331.

6. Venue is proper in this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391 (b) as the acts and transactions constituting the violations alleged herein, occurred in part in this judicial district and the Defendants are found and transact business in this judicial district.

## III. CLASS ALLEGATIONS

7. This action is brought as a class action pursuant to Fed. R. Civ. Pro. 23. The class definition is as follows:

> All those purchasers of Hill-Rom Hospital Beds and In-room Products from Defendants for the past 5 years where there have been contracts between Defendants and the class members, either on behalf of themselves or through purchasing organizations, and where those contracts condition discounts on Hill-rom Hospital Beds and other In-Room Products on commitments to rent or purchase Specialty Hospital Beds exclusively from Defendants.

8. The class meets the prerequisites to a class action under Fed. R. Civ. Pro. 23(a) in that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are common questions of law or fact to the class; 3) the claims

and defenses of the representative parties are typical of the claims or defenses of the class, and; 4) the representative parties will fairly and adequately protect the interests of the class.

9. Further, this action meets the requirements of Fed. R. Civ. Pro. 23(b)(2) and (b)(3). Plaintiff is seeking damages and injunctive relief to prevent future violations of the Antitrust laws, thus meeting the requirements of Fed. R. Civ. Pro. 23(b)(2). Additionally, this should be treated as a class action under Fed. R. Civ. Pro. 23(b)(3)

10. Based on the foregoing, this action should be treated as class action and SRHS should be certified as the class representative.

## III. NATURE OF TRADE AND COMMENCE

### A. Hospital Beds

11. Hospital Beds, typically have heavy duty metal frames; are adjustable to different positions by a hand-controlled electric motor; have adjustable side rails; and contain a communication system in one of the side rails which allows for electronic communications from the bed to a nurse's station ("Hospital Beds"). Hill-Rom manufactures Hospital Beds suitable for patient room use in acute care hospitals and sub-acute care facilities ("Hill-Rom Hospital Beds").

12. Hill-Rom manufactures Hill-Rom Hospital Beds in Batesville, Indiana and Hill-Rom sells them in interstate commerce to acute care hospitals and subacute care facilities throughout the United States, including this judicial district.

### B. Specialty Hospital Beds

13. Specialty Hospital Beds include: air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds, which are designed for treatment of specific medical conditions such as burns, pressure sores, pulmonary complications or pain management ("Specialty Hospital Beds"). Hill-Rom manufactures and rents certain types of Specialty Hospital Beds ("Hill-Rom Specialty Hospital Beds"). Specialty Hospital Beds sell for between $20,000.00 and $60,000.00. Most of the Specialty Hospital Beds are rented to the customers on a per day basis.

14. Hill-Rom manufactures Hill-Rom Specialty Hospital Beds in Charleston, South Carolina and distributes those beds in interstate commerce by sale and/or rental to acute care hospitals located throughout the United States, including this judicial district.

15. Specialty Hospital Beds are generally rented on a short-term basis rather than sold to hospitals. In excess of 90% of the commerce in Specialty Hospital Beds is conducted in this manner. The reason for the predominance of short term rental as the preferred method of distribution of Specialty Hospital Beds is that most hospitals do not want to expend the capital necessary to purchase Specialty Hospital Beds and usually are not equipped to properly maintain, decontaminate and store such beds. In addition, short term rental allows the hospitals to have the beds on an "as needed" basis.

16. The market for Specialty Hospital Beds in the United States historically was highly competitive and had a number of competitors. Even at this, Kenetic Concepts, Inc. ("KCI") manufactures high quality and competitive Specialty Hospital

Beds. KCI does not however, compete in the regular Hospital Bed and In-room Products Market. The number of competitors in the Specialty Hospital Bed Market has decreased significantly in recent years due, in large part, to the anti-competitive activities of Hill-Rom.

## C. Hospital Purchasing Groups

17. In excess of 70% of the Hospital Bed and Specialty Hospital Bed purchases and rentals are entered into pursuant to master group contracts with hospital purchasing groups. There are approximately 20 national hospital purchasing groups in the United States. Approximately half of these act as purchasing agents for the vast majority of all large hospitals in the United States and each of these hospital purchasing groups represents a significant share of the market demand for Hospital Beds and Specialty Hospital Beds. In this case, Plaintiff is an equity member of a purchasing group known as Premier.

18. There are two types of hospital purchasing groups. In a "proprietary" group, the member hospitals are all owned by the same entity and that entity enters into a master agreement to purchase or rent equipment for all of its hospitals. In a "proprietary" group, the individual hospital generally does not exercise a choice as to whether it will participate in the negotiated master contract. The hospital owner simply enters into a contract to procure equipment for all of its hospitals.

19. In a "voluntary" hospital purchasing group, the individual hospital members are not commonly owned. Rather, each member is an individual entity that voluntarily joins the group in order to gain the benefits of group purchasing. "Premier" is

an archetypical voluntary organization. Where voluntary hospital purchasing groups are in use, the individual hospital usually has the choice to either purchase or rent equipment under the master group contract or separately negotiate its own agreement with the group provider or another provider. However, voluntary groups obtain better terms for their members if a high percentage of the membership participates in the master group purchasing contract. As a result, the voluntary groups encourage their members to participate in master group contracts and it is in the long term economic interest of the members to do so. Generally, voluntary purchasing groups obtain "compliance" with their master group contracts from 65% or more of their members.

20. Hospital purchasing groups have historically negotiated master rental agreements for the Specialty Hospital Bed needs of their member hospitals. These master rental agreements have typically provided only for the rental of Specialty Hospital Beds and have not included other products. Hospital Beds were typically bid separately and were the subject of separate agreements.

## IV. RELEVANT MARKETS AND MARKET POWER

### A. Hospital Beds

21. There exists a relevant economic product and/or service market for the sale of new and refurbished or remanufactured Hospital Beds. This product and/or service market includes the provision of refurbishment and remanufacturing services to hospitals that continue to own the Hospital Beds, as the refurbishment or remanufacturing service is an economic substitute for and directly competitive with the purchase of a new Hospital Bed.

22. The relevant geographic market for the product and for service market alleged in paragraph 21 above is the United States (the relevant product and/or service market and relevant geographic market are hereinafter collectively referred to as "the Hospital Bed Market").

23. Hill-Rom's market share in the Hospital Bed Market is in excess of 90%.

24. Hill-Rom enjoys monopoly power in the Hospital Bed Market in that it has the power to raise prices above the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom also has the power to control price and to earn monopoly profits in, or exclude competition from, the Hospital Bed Market.

**B. Specialty Hospital Beds**

25. There exists a relevant product market for the cluster of products that is included within the term Specialty Hospital Beds. This cluster of products is generally sold or rented in one master supply contract which covers the consumer's need, from time to time, for air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds (hereinafter referred to as the "Specialty Bed Cluster"). In the Specialty Bed Cluster market, different suppliers of Specialty Hospital Beds compete against each other to be the supplier of the Specialty Bed Cluster products contained within the term Specialty Hospital Bed.

26. The Specialty Bed Cluster market is hereinafter referred to as the "Specialty Hospital Bed Market" (i.e., the term "Specialty Hospital Bed Market" as used herein includes the Specialty Bed Cluster market).

27. The relevant geographic market for Specialty Hospital Beds is the United States.

28. Hill-Rom enjoys a market share in excess of 55% in the Specialty Hospital Bed Market. Hill-Rom also enjoys a considerable degree of market power in the Specialty Hospital Bed Market in that it has the power to raise prices without losing a proportionate amount of sales to competitors.

29. The second largest competitor in the Specialty Hospital Bed Market is KCI.

**C. In-Room Products**

30. There exists a relevant economic product market for the manufacture and sale of acute care hospital room headwall units and other in-room products such as furniture and over-bed tables. (This group of products will be referred to as "In-room Products").

31. The relevant geographic market for hospital In-room Products is the United States. (This relevant product and geographic market is hereinafter referred to as the "In-room Products Market.")

32. Hill-Rom's market share in the In-room Products Market is in excess of 70%.

33. Hill-Rom enjoys monopoly power in the In-room Products Market in that it has the power to raise prices in excess of the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom has the power to control prices

and to earn monopoly profits in, or exclude competition from, the In-room Products Market.

**D. Critical Care Specialty Beds For Use in ICU Units**

34. There exists a relevant product market or sub-market for rotating critical care air suspension beds sold or rented for use in ICU units. These beds are built on frames that are specially designed for use in ICU units and are smaller and more mobile than hospital beds and allow quicker and easier access to gravely-ill patients.

35. The relevant geographic market for such rotating critical care air suspension beds is the United States (this relevant product and geographic market or sub-market is hereinafter referred to as the "Critical Care Specialty Bed Market").

36. Hill-Rom's market share in the Critical Care Specialty Bed Market or sub-market is in excess of 60%.

**V. ILLEGAL CONDUCT ALLEGED**

**A. Bundling**

37. Since at least as early as 1995, Hill-Rom has responded to bid requests from hospital purchasing groups and individual hospitals by submitting a "bundled" proposal for the rental of Specialty Bed Cluster products as well as the purchase of Hill-Rom Hospital Beds and In-room Products. When made to a proprietary purchasing group or an individual hospital, the terms of the proposed Hill-Rom bundle are as follows: (1) the proprietary purchasing group or individual hospital will exclusively purchase Hill-Rom Hospital Beds and In-room Products and exclusively rent Hill-Rom Specialty Hospital Beds; (2) that Hill-Rom will offer to the hospital purchasing group or

individual hospital significant discounts on Hill-Rom Hospital Beds and In-room Products, but that these discounts will only be made available to the purchaser on the condition that the purchasing group or individual hospital agrees to exclusively rent Hill-Rom Specialty Hospital Beds.

38. When made to a voluntary hospital purchasing group, the terms of the proposed Hill-Rom bundle is a variation on the following: (1) the voluntary purchasing group must agree to exclusively recommend to its members and promote the proposed Hill-Rom bundle to its members; (2) the recommended and pre-negotiated contract that is made available to each member hospital provides for the purchase of Hill-Rom Hospital Beds and headwall units for 90% of the hospital's needs, and the rental of Hill-Rom Specialty Hospital Beds for 90% of the hospital's Specialty Hospital Bed needs; (3) Hill-Rom will offer significant discounts to the member hospitals on the purchase price of the Hill-Rom Hospital Beds and In-room Products, but these discounts will be made available only on the condition that the individual hospital member commits in writing; to exclusively purchase 90% of its Hospital Beds and In-room Products from Hill-Rom and exclusively rent 90% of its Specialty Hospital Bed needs from Hill-Rom.

39. Thus, significant discounts are made available on Hill-Rom Hospital Beds to individual hospitals, proprietary hospital purchasing groups and voluntary hospital purchasing groups, but only on the condition that the individual hospital, proprietary hospital purchasing group or voluntary hospital purchasing group agrees to exclusively rent Hill-Rom Specialty Hospital Beds to the exclusion of all other providers of such

Specialty Hospital Beds. Hill-Rom's bundling activity as alleged herein is motivated by exclusionary and anti-competitive purposes and without legitimate business justification.

40. Due to the fact that many hospitals have high dollar volume needs for Hospital Beds and/or In-room Products, they cannot, as a practical matter, afford to pass up the Hill-Rom discounts on these products which are only available if the purchaser commits to exclusively rent 90% of its Specialty Hospital Beds from Hill-Rom. As a result, numerous hospitals and hospital purchasing groups who would have preferred to rent KCI Specialty Hospital Beds have been forced to exclusively rent at least 90% of their Specialty Hospital Beds in order to obtain the discounts on Hill-Rom Hospital Beds and/or headwall units

41. Due to the fact that Hill-Rom enjoys monopoly power over the Hospital Bed and In-room Products Market, based upon information and belief, Hill-Rom has a gross profit margin of approximately 50% on its sales of those products.

42. Due to the fact that the dollar volume of sales in the Hospital Bed and In-room Products Market is greater than the dollar volume of sales in the Specialty Hospital Bed Market, the discounts that Hill-Rom is making available on Hill-Rom Hospital beds and/or In-room Products far exceed the dollar value of any discount that any other Specialty Hospital Bed manufacturer, including KCI, could, as a practical matter, give on Specialty Hospital Bed rentals without becoming unprofitable in the short run and being driven out of business in the long run.

43. Although KCI is at least as efficient a competitor as Hill-Rom, in order for

KCI to offer as great a total dollar value discount to hospital purchasing groups on Specialty Hospital Bed rentals as Hill-Rom is making available through its bundling of Hill-Rom Hospital Beds and/or In-room Products, KCI would have to charge a rental price that does not cover its marginal cost of manufacturing and renting Specialty Hospital Beds.

44. Hill-Rom's bundling activities as alleged herein, were motivated by exclusionary, and anti-competitive purposes and without legitimate business justification.

**B. Example of Hill-Rom Bundling**

45. Hill-Rom has induced and coerced various hospital purchasing groups to enter into agreements to exclusively recommend to the group's members that the members exclusively purchase Hill-Rom Hospital Beds and/or In-room Products and rent Hill-Rom Specialty Hospital Beds. These agreements provide for additional discounts to member hospitals on Hill-Rom Hospital Beds and/or In-room Products in exchange for the commitment to sole source 90% of a member's Specialty Hospital Bed requirements from Hill-Rom. Hill-Rom has induced the hospital purchasing groups to enter into such agreements by refusing to make the additional discounts on Hill-Rom Hospital Beds and/or In-room Products without the commitment to rent Hill-Rom Specialty Hospital Beds.

46. On information and belief, many members of the hospital purchasing groups would have chosen to rent KCI Specialty Hospital Beds if the Hill-Rom bundled agreement had not been offered. The hospitals were induced to enter into a bundled

agreement with Hill-Rom in order to obtain otherwise unavailable discounts on Hill-Rom's Hospital Beds and/or In-room Products.

47. Hill-Rom has induced and coerced various hospitals and purchasing organizations to enter into multi-year agreements whereby in exchange for additional discounts on Hill-Rom's Hospital Beds and/or In-room Products and/or 90% of its Specialty Hospital Bed needs from Hill-Rom, the hospital is required to commit to sole source at least 90% of its Specialty Hospital Bed needs from Hill-Rom.

## VI. VIOLATIONS ALLEGED
### Count 1–Attempt to Monopolize and Conspiracy to Monopolize the Specialty Bed Market

48. Plaintiff re-alleges paragraphs 1-47 above.

49. Hill-Rom possesses monopoly power over the relevant markets or sub-markets for Hospital Beds and In-room Products.

50. Hill-Rom has offered certain discounts on Hill-rom Hospital Beds and In-room Products only on the condition that the purchaser agree to exclusively rent Hill-Rom Specialty Hospital Beds. Hill-Rom has refused to make such discounts available if the purchaser does not commit to exclusively purchasing or renting Hill-Rom Specialty Hospital Beds.

51. Due to the number of Hospital Beds and In-room Products that some hospitals need to purchase, it is not economically feasible for certain hospitals to refuse to accept the Hill-Rom bundle and the accompanying discount on Hill-Rom Hospital Beds and In-room Products. As a result, these hospitals are forced to agree to

exclusively rent Hill-Rom Specialty Hospital Beds even though many of them would otherwise choose to rent other Specialty Hospital Beds.

52. Hill-Rom, by refusing to make the Hill-Rom Hospital Bed and/or In-room Product discounts available unless the hospital or purchasing group agrees to exclusively rent or purchase Hill-Rom Specialty Hospital Beds, has used its monopoly power over Hospital Beds and In-room Products to injure competition or gain a competitive advantage in the Specialty Hospital Beds Market or sub-markets.

53. The effect of Hill-Rom's conduct is to exclude KCI and other Specialty Hospital Bed competitors from a substantial share of the Specialty Hospital Bed Market and foreclose competitors from being able to compete freely in the relevant Specialty Hospital Bed Market or sub-markets. This affect on competition is to the detriment of Plaintiff and the class. Hill-Rom has achieved this market foreclosure by conduct that is unrelated to the competitive merits of Hill-Rom Specialty Hospital Beds or their price.

54. Hill-Rom has engaged in this bundling conduct for the specific anti-competitive purpose of foreclosing a substantial share of the Specialty Hospital Bed Market or sub-markets to competitors and obtaining for itself monopoly power over the Specialty Hospital Bed Market or sub-markets.

55. There is a dangerous probability that, unless enjoined by this Court, Hill-Rom will achieve its unlawful goal of obtaining, through anti-competitive or exclusionary means, a monopoly or a further monopoly in the Specialty Hospital Bed Market or sub-markets.

56. Hill-Rom has unlawfully conspired and attempted to monopolize the

Specialty Hospital Bed Market or sub-markets in violation of § 2 of the Sherman Act (15 U.S.C. § 2).

57. Plaintiff, and the class it represents, have been injured in their business or property within the meaning of § 4 of the Clayton Act (15 U.S.C. § 15), by Hill-Rom's unlawful conduct in that hospitals who would have preferred to rent Specialty Hospital Beds from other manufacturers and have been forced to exclusively rent Hill-Rom Specialty Hospital Beds in order to obtain discounts on Hill-Rom Hospital Beds and In-room Products.

**Count II -- Tying Specialty Beds to Hospital Beds**

58. Plaintiff realleges paragraphs 1-57 as set forth above.

59. Hill-Rom has tied the sale of Hill-Rom Hospital Beds and In-room Products (tying products) to the rental or sale of Hill-Rom Specialty Hospital Beds (tied product).

60. Hill-Rom enjoys substantial market power (indeed, monopoly power) in the Hospital Bed Market and the In-room Products Market and the rental or sale of Specialty Hospital Beds exceeds $200,000,000.00 per year and constitutes a not insubstantial amount of commerce.

61. The tying of Hill-Rom Specialty Hospital Bed rentals or sales to the purchase of Hill-Rom Hospital Beds and headwall units, therefore, constitutes a per se violation of § 1 of the Sherman Act (15 U.S.C. § 1) and § 3 of the Clayton Act (15 U.S.C. § 14).

62. In the alternative, the tying of Hill-Rom Specialty Hospital Beds to Hill-Rom Hospital Beds and In-room Products has unreasonably injured competition in the Specialty Hospital Bed Market or sub-markets by foreclosing a substantial share of the relevant Specialty Hospital Bed Market or sub-markets to KCI and other competitors for a period of five or more years and preventing Plaintiff, and the class it represents (hospital purchasing groups and hospitals), from being able to freely and competitively select Specialty Hospital Beds on the merits of price and quality considerations and pursuant to their preference. The result of Hill-Rom's conduct has been to unreasonably injure competition in the Specialty Hospital Bed Market or sub-markets and prevent and eliminate price and quality competition in the relevant Specialty Hospital Bed Market or sub-markets, all in violation of § 1 of the Sherman Act, § 3 of the Clayton Act.

63. Plaintiff, and the class it represents, have been injured in their business or property, within the meaning of § 4 of the Clayton Act in an amount in excess of $100,000,000.00 and are threatened with further injury within the meaning of §16 of the Clayton Act in that they have been and will continue to be precluded from buying or renting Specialty Hospital Beds that they would rent or buy, but for the continuing illegal conduct of Hill-Rom, as alleged herein.

## VII. STATE LAW CLAIMS

64. Plaintiff reiterates paragraphs 1-63 above as though set forth verbatim herein.

65. The state law claims are properly heard in this court based on supplemental jurisdiction, 28 U.S.C.A. § 1367.

**Count III- State Law Claims for Kansas, South Carolina, and Tennessee**

66. In some states, notably Kansas, South Carolina, and Tennessee, state statutes provide that arrangements made with a view to lessen, or which may lessen, full and free competition in the marketplace for any goods in commerce are void as against public policy. See, Kansas St. Ann. § 50-112; S.C. Code Ann. § 39-3-10; Tenn. Code Ann. § 47-25-101.

67. Hill-Rom's conduct as herein pled violates the state statutes as the arrangements of tying the sale of Hill-Rom Specialty Hospital Beds and Hill-Rom Hospital Beds, and the attempts to monopolize, were created with a view to lessen, and indeed do lessen, full and free competition in the marketplace.

68. As a result of the violations of the state statutes, Plaintiff is entitled to recover the full consideration paid to Hill-Rom pursuant to Kansas St. Ann. § 50-115; S.C. Code Ann. § 39-3-30; Tenn. Code Ann. § 47-25-106.

69. Additionally, Plaintiff is entitled to injunctive relief barring the further violations of the state statutes.

WHEREFORE, Plaintiff, and the class it represents, pray as follows:

A That Plaintiff be certified as class representative and that this action proceed as a class;

B. That Plaintiff, and the class it represents, be awarded the amount of the actual and any special damages caused them by Hill-Rom's illegal acts.

C. That Plaintiff, and the class it represents, be awarded treble the amount of the actual damages caused them by Hill-Rom's illegal acts as provided for by § 4 of the Clayton Act.

D. That Hill-Rom be preliminarily, and thereafter permanently, enjoined from enforcing any of the exclusive dealing, tying, or bundling arrangements that they have entered into with any voluntary or proprietary purchasing group or hospital.

E. That Hill-Rom pay to Plaintiff, and the class it represents, the full consideration paid to Hill-Rom under the state statutes.

F. That Hill-Rom be preliminarily, and thereafter permanently enjoined from requiring hospitals or hospital purchasing groups to rent or purchase Hill-Rom Specialty Hospital Beds in order to obtain discounts on Hill-Rom Hospital Beds or In-room Products;

G. That Plaintiff, and the class it represents, be awarded their reasonable attorneys fees and cost of this suit as provided by the Clayton Act.

H. That the Court grant Plaintiff , and the class it represents, such other and further relief as it deems just.

I. That Plaintiff, and the class it represents, request a trial by jury.

John G. Felder, Jr.
FELDER & MCGEE
PO Box 346
St. Matthews, SC 29135
803-874-2010
803-655-7167 (Fax)
Fed. ID#: 784

Chad McGowan
MCGOWAN & HOOD
125 Hampton Street
Suite 101
Rock Hill, SC 29730
803-327-7800
803-328-5656 (Fax)

Gordon Ball
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street
Suite 150
Knoxville, TN 37902
865-525-7028
865-525-4679 (Fax)
(*Will be admitted pro hac vice*)

Shelly L. Wilson
Robertson &Overbey
530 S. Gay Street, Suite 802
Knoxville, TN 37902-1537
(865) 521-3010
(865) 522-7929 (Fax)
(*Will be admitted pro hac vice)*

 2003

**PLAINTIFF DEMANDS A JURY TRIAL**