IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, | ) ) ) ) Civil Action No. 7:03-2141-HFF-BHH |
| Plaintiff, | ) ) |
| vs. | ) **O R D E R** ) ) |
| Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., | ) ) ) |
| Defendants. | ) ) |

      This matter is before the court on two motions to compel filed by the plaintiff and one motion to compel filed by the defendants. The motions were referred to this court for disposition pursuant to Title 28, United States Code, Section 636, by order of the Honorable Henry F. Floyd, United States District Judge.

      The plaintiff Spartanburg Regional Healthcare System ("SRHS") brought this antitrust case pursuant to the Sherman and Clayton Acts. The action was brought as a class action pursuant to Federal Rule of Civil Procedure 23. A motion to certify the class is now pending before this court. On May 6, 2005, this court granted the plaintiff's motion to file a second amended complaint. The defendants are Hillenbrand Industries, Inc., a publicly-traded holding company for businesses in the health care and funeral services industries; Hill-Rom, Inc., a wholly-owned subsidiary of Hillenbrand Industries, Inc.; and Hill-Rom Company, Inc., a wholly-owned subsidiary of Hillenbrand Industries, Inc. (collectively "defendants" or "Hill-Rom").

***Plaintiff's Motion to Compel Responses to First Request to Produce***

The plaintiff served Hill-Rom with its first request for production of documents on July 30, 2004. The "central focus" of the discovery request was to obtain material from a prior antitrust case, *Kinetic Concepts, Inc. v. Hillenbrand Indus., Inc.*, C.A. No. SA-95-CV-0755-FB (W.D. Tex.) ("*Hill-Rom I*") (pl. m. to compel 1-2). In *Hill-Rom I*, one of the defendants' competitors, Kinetic Concepts, Inc. ("KCI"), alleged that the defendants violated Sections 1 and 2 of the Sherman Act based upon the bundling of discounts on standard hospital beds with commitments to rent specialty hospital beds. The parties agreed that the responses and objections to the first request to produce would be due on October 1, 2004. On that date, the defendants timely served their responses and objections and made available several hundred boxes of documents[1] to the plaintiff in Dallas, Texas, where the documents had been stored following *Hill-Rom I*. The plaintiff complains that the boxes were brought for inspection from the warehouse in no apparent order and that it quickly became clear that the plaintiff would need to copy the entire production. The defendant transported the boxes to Batesville, Indiana, where Hill-Rom is headquartered, so that the documents could be copied by a vendor with whom Hill-Rom had a relationship. The documents were Bates-stamped and scanned by optical character recognition ("OCR"), enabling the plaintiff to search the documents for keywords, and were produced to the plaintiff beginning on October 27, 2004, and concluding on November 15, 2004. Approximately 50 additional boxes of documents were produced by the defendants in late November (pl. m. to compel 8-9).

The plaintiff asks that the court require the defendants " to make clear what documents they have produced" (m. to compel 8). The plaintiff complains that the

---

[1] The plaintiff states in its motion that "roughly 490 boxes" were produced. The defendant contends that this number is incorrect and that actually 531 boxes were made available for inspection in Dallas. In its reply brief, the plaintiff again asserts that only 490 boxes were produced (pl. m. to compel 6; def. resp. m. to compel 1 n. 1; pl. reply 9).

2

defendants have "dumped" the documents in a disorganized fashion and argues that the defendants should be required to organize and label the documents to indicate which documents respond to the requested categories of documents. The plaintiff further claims that the defendants have "deliberately mixed critical documents within their voluminous production in a plain attempt to obscure critical information" (pl. m. to compel 5).

The defendants contend that the documents were produced as they are kept in the usual course of business in accordance with Federal Rule of Civil Procedure 34(b). Accordingly, the defendants maintain that they have no obligation to further organize or otherwise identify the documents (def. resp. m. to compel 9-10). The defendants note that the *Hill-Rom I* documents were produced in new boxes labeled for the instant litigation because many of the boxes used in the prior litigation were falling apart. The defendants further maintain that following *Hill-Rom I* the boxes were stored non-sequentially and were likewise received from the storage facility non-sequentially and in several shipments over a number of days. According to the defendants, the documents were re-boxed in the order in which they arrived, and they did not disturb the order of the documents within the boxes (def. resp. m. to compel 10-11).

Given the volume of documents involved in this case and the confusion over which documents and how many boxes of documents have been produced, the defendants are ordered to provide the plaintiff with an index, including the Bates numbers from this litigation (HBKC Bates numbers), of *all* the documents in *all* the boxes produced to the plaintiff in response to the first request for production of documents. The parties are instructed to confer with each other to resolve the confusion over the number of boxes produced and the content of each box.

The plaintiff next complains that the defendants have not produced all documents that refer to or relate to the plaintiff, as requested in document request number one. The plaintiff states that the defendants have objected to this request as it requires

3

them to produce documents prior to June 30, 1999. The defendants contend that they now have produced six boxes of documents for the time period 1988 to present that they have been able to locate after a reasonable search, even though they objected to producing documents prior to the class period. The defendants have also agreed to produce a privilege log on a rolling basis. As set forth below with regard to the motion to compel responses to the second request produce, this court finds that documents dating back to 1985 are relevant to this action. Accordingly, the plaintiff's motion to compel is granted with regard to this request.

Request for production number two seeks documents produced in discovery in *Hill-Rom I*. The defendants have produced all non-privileged documents except those produced in prior patent suits, which the defendants claim are irrelevant to the instant case (def. resp. m. to compel 16). The plaintiff argues that these documents are relevant because "the possession of patents can shape market entry and exit" and further argues that the defendants' own actions undermine their relevance objection in that the defendants questioned the plaintiff's experts regarding the possession and dispossession of patents and recently served a subpoena upon KCI seeking documents relative to patents acquired by KCI for specialty beds (pl. m. to compel 14; pl. reply 5). Based upon the foregoing, the plaintiff's motion to compel is granted with regard to this request.

Request number three seeks trial transcripts from *Hill-Rom I*, including exhibits, demonstratives, and videos admitted into evidence or shown to the jury. The defendants maintain that they have produced all responsive materials, except for "any confidential information produced by another party pursuant to a protective order" (pl. resp. m. to compel 17). In its reply brief, the plaintiff states that the defendants have not produced every trial exhibit (pl. reply 4). If the defendants have not yet produced *all* trial exhibits and demonstratives, they are ordered to do so. The defendants are also ordered to confirm that *all* videos admitted into evidence or shown to the jury during the *Hill-Rom I*

trial have been produced to the plaintiff and further are ordered to identify which videotapes are responsive to this request.

Request for production number four seeks all pleadings from *Hill-Rom I*. The defendants maintain that they have provided all such pleadings in their possession, custody, or control (def. resp. m. to compel 17). Request number five seeks deposition transcripts and exhibits from *Hill-Rom I*. The plaintiff has identified a number of exhibits from depositions that were not included in the defendants' production (pl. reply 4 n. 7). Further, in their supplemental memorandum, the plaintiff claims that it recently discovered that the defendants have used *Hill-Rom I* deposition transcripts to prepare two witnesses[2] for their depositions in the instant case, although the *Hill-Rom I* deposition transcripts have not been produced to the plaintiff (pl. supp. 6-7). The defendants are ordered to produce *all* certified deposition transcripts and exhibits as requested by the plaintiff, if they have not already done so. Further, the defendants are ordered to produce the deposition transcripts in their electronic form, to the extent that the defendants possess such transcripts.

Request for production number six seeks non-admitted trial exhibits, which the defendants claim they have already produced. The defendants are ordered to identify where these documents are located within the *Hill-Rom I* production.

Based upon the foregoing, the plaintiff's motion to compel is granted in part and denied in part. The defendants are ordered to produce the responsive documents as set forth above no later than June 13, 2005.

***Plaintiff's Motion to Compel Responses to Second Request to Produce***

The plaintiff's second request for production of documents was served on defendants on August 25, 2004. The defendants provided responsive documents in

---

[2] These witnesses are identified as Gregg Lauder and Lynn Detlor.

5

October and November. The plaintiff has filed a motion to compel responses to its second request to produce, raising general deficiencies in the defendants' production as well as specific alleged deficiencies with regard to approximately 30 of the requests.[3]

The first issue concerns the time period of discovery in this case. The plaintiff's discovery requests seek documents for the time period of January 1, 1985, through the present. The plaintiff states that recent discovery showed that the defendants' "bundling pricing scheme began in 1990 whereby any discounts would be offset by price increases" (pl. m. to compel 9). On May 6, 2005, this court granted the plaintiff's motion for leave to file a second amended complaint, which contains a claim for fraudulent concealment and expands the period of damages back to 1990 (pl. m. to compel 9). The plaintiff states that it has asked for documents from 1985 because that is the year the defendants acquired SSI, a specialty bed maker with whom the defendants conducted joint marketing programs beginning shortly thereafter (pl. m. to compel 10). The plaintiff's expert, Professor Economides, stated in his declaration that he "would like to examine data from the period beginning a few years before the bundle was implemented as well as for several years after the bundle pricing was utilized to determine whether the conditions of competition were changed as a result of the bundled pricing." He further stated that "price and market data going back to the mid 1980's . . . would thus be extremely useful . . . " (pl. m. to compel, ex. 8 at 3).

The defendants have agreed to search for documents dating back to 1999. They argue that the request for documents prior to 1999 is duplicative and unduly burdensome in that Hill-Rom has already searched its files in response to nearly identical

---

[3] The court notes that seven briefs (motion, response, reply, supplement to motion, response to supplement, reply, and surreply) have been filed by the parties with regard to these discovery requests. The court will address only those general deficiencies that appear to still be at issue. Should the order not resolve any specific discovery issue that the parties have not and cannot resolve on their own given the court's rulings, the parties may request that the court address those issues by telephone conference call.

document requests served by opposing counsel in *Hill-Rom I*, which have already been produced to the plaintiff in this case. The defendants also claim that documents prior to 1988 are irrelevant to the claims or defenses in this action (def. resp. m. to compel 7). This court finds that documents dating back to 1985 are relevant to this action. Accordingly, the defendants are ordered to search for and produce responsive documents for the time period between January 1, 1985, to the present.

The plaintiff alleges that the defendants' production of price and cost data appears to be incomplete. In their response, the defendants state that they have "already produced the majority of the pricing and cost data that Plaintiff has requested" (def. resp. m. to compel 1). To the extent the defendants have not produced responsive relevant price and cost data for the years 1985 to present, they are ordered to do so.

The plaintiff next argues that the defendants should be ordered to produce documents in electronic format to the extent that the defendants electronically maintain responsive documents. Specifically, the plaintiff takes issue with the defendants' productions of paper printouts of e-mails. The defendants argue that they have no obligation to produce in electronic format all e-mails that are currently maintained in electronic form and which have been previously produced in hard copy (def. resp. m. to compel 10). Nonetheless, the defendants state that they have "generally agreed to provide, when feasible, electronic copies of documents that have been produced in hard copy" (def. resp. m. to compel 11).

The plaintiff also demands that the defendants certify that they have "reviewed all the electronic metadata with respect to any e-mail message which is asserted to be privileged and that all persons who may have received a particular message on a bcc basis have been identified and determined to have been within the privilege" (pl. m. to compel 12). The defendants argue that such a demand is unduly burdensome as it would require the defendants to go back and review all the metadata for every single privileged e-mail just

in case a recipient of a blind carbon copy of that e-mail was not within the privilege. The defendants also contend that such a search would be unlikely to uncover new documents (def. resp. m. to compel 10-11). Based upon the foregoing, this court finds that the defendants should not be required to provide documents in electronic format that they have already produced in hard copy. Furthermore, the defendants are not required to make the certification demanded by the plaintiff.

The plaintiff asks that the court order the defendants to produce documents relating to hospital beds, specialty beds, and architectural products, as those terms are defined in the plaintiff's document request (pl. m. to compel 12-14). The document request defines architectural products as including headwall units and other products on which the defendants give a discount in return for a commitment to rent specialty hospital beds from the defendants (pl. m. to compel, ex. 1 at 2). The defendants have produced sales data only for the standard and specialty hospital beds and have refused to produce documents relating to sales of architectural products. The defendants argue that the plaintiff's definition of architectural products encompasses hundreds of products that the plaintiff has not put at issue in this action. The defendants argue that, as written, the plaintiff's request would require the defendants "to produce documents relating to almost every capital product it manufactures since the majority of these products have been part of an optional package discount at some time" (def. resp. m. to compel 13).

After the motion to compel was filed, the plaintiff filed its second amended complaint. That amended complaint uses the term "architectural products and in-room products," which are defined as including "headwall units and patient room furniture, such as guest chairs and over-bed tables"(2nd amended comp. ¶¶ 10, 21-23).[4] The defendants argue that only those products as defined in the complaint are conceivably relevant

---

[4] The first amended complaint defined in-room products similarly as "headwall units and other in-room products such as furniture and over-bed tables" (1st amended comp. ¶ 30).

8

because the plaintiff has not alleged that Hill-Rom has used monopoly power to violate antitrust laws with regard to all products encompassed in the plaintiff's definition of architectural products as set forth in its document request (def. resp. m. to compel 13-14). This court agrees with the defendants that the definition of architectural products in the plaintiff's document request would unduly burden the defendants. Accordingly, the defendants are ordered to produce, if they have not done so already, the requested information with regard to architectural and in-room products as defined in the second amended complaint.

In its supplement to the motion to compel, the plaintiff argues that the defendants have failed to produce key group purchasing organization ("GPO") documents (pl. supp. 1-4). The defendants state in their response that they have already produced copies of all GPO contracts for the period 1988 to 1998. Further, the defendants state that the files of Diane Kessens, a senior contract administrator in Hill-Rom's national accounts department, have been collected and will be produced. If they have not done so already, the defendants are ordered to produce these documents.

The plaintiff next argues that the defendants failed to produce documents relating to their pricing decisions  The defendants argue that the pricing code-related information is duplicative of the information contained in the GPO contracts, which already have been produced to the plaintiff (def. resp. to supp. 6). The plaintiff counters that the actual price schedules are not in the contracts, and to recreate the information would be an enormous task for the plaintiff (pl. reply to resp. to supp. 3). The plaintiff contends that the information is critical to its ability to analyze whether it paid higher prices than it would have paid in a fully competitive market (pl. reply to resp. to supp. 2). While the defendants argue that producing the pricing code-related information would be unduly burdensome (def. resp. to supp. 7), the plaintiff counters that since the defendants have already identified the contracts that are relevant to this litigation, the only additional burden would be to copy the

associated pricing schedule for each of the identified contracts, which would be a much smaller burden than having the plaintiff recreate the price schedules from scratch (pl. reply to resp. to supp. 4). Based upon the foregoing, the plaintiff's motion to compel the pricing code-related information is granted.

The plaintiff next argues that the defendants failed to produce e-mail messages responsive to the plaintiff's requests, despite Hill-Rom's statement that it was in the process of searching for and producing responsive information from e-mail files (pl. supp. 7-8). The defendants respond that "[t]o date, Defendants have produced all e-mail relating to Plaintiff and any relevant, responsive hard copies of e-mail found in department files or individual employee files that were searched" (def. resp. to supp. 12). Additionally, the defendants state that for several months they "have been pulling e-mails from electronic files of approximately 28 employees who might have responsive documents" (def. resp. to supp. 12). The defendants contend that to search the e-mail, copy the e-mails from computer servers, and then review the over 160 boxes of e-mails for responsiveness and privilege is unduly burdensome. The defendants propose that they instead conduct a "comprehensive e-mail and electronic documents each of a smaller subset of 12 employees who were involved in pricing and transaction-related decisions." The defendants propose that they focus "on the production of these 12 individuals' e-mails and electronic documents and then complete the review and production of the e-mails for the other employees whose e-mails have already been pulled off the servers" (def. resp. to supp. 12, ex. 17). The court finds the defendants' proposal is reasonable in light of the enormity of the task before them. Accordingly, if they have not done so already, the defendants are ordered to produce responsive e-mails of the subset of 12 employees first and then continue their review and production of the e-mails already pulled off the servers.

Lastly, the plaintiff contends that Hill-Rom has not provided an adequate privilege log. The defendants are directed to produce a privilege log that includes the Bates

10

numbers from this case and are further directed to provide the names of the authors and recipients and the dates of any allegedly privileged notes on any of the documents (pl. supp. 10).

Based upon the foregoing, the plaintiff's motion to compel is granted in part and denied in part. The defendants are ordered to produce the responsive documents as set forth above no later than June 13, 2005.

***Defendants' Motion to Compel Responses to Third Request to Produce***

The defendants have moved the court to compel the plaintiff to produce all documents responsive to requests numbers 6, 7, and 9 of the defendants' third request for production of documents. These requests seek documents "evidencing Plaintiff's financial condition during the period 1988 to present" (def. m. to compel 1). Specifically, the requests seek the following: request number six seeks "all budgets, forecasts and capital plans for SRHS"; request number seven seeks "all documents reflecting SRHS's future development plans relating to physical plant, staffing, and services . . . "; and request number nine seeks "documents sufficient to show the annual compensation" of the plaintiff's top executives. The defendants argue that the requested discovery is relevant to the plaintiff's allegation that it "was 'forced' to rent specialty hospital beds from Hill-Rom because it could not, 'from an economic standpoint, afford to pass up the Hill-Rom discounts'" (def. m. to compel 1).

The plaintiff counters that whether it "or any other individual hospital could 'afford' to reject Hill-Rom's bundle . . . is *not* an element of any of [the plaintiff's] antitrust claims" (pl. resp. m. to compel 3). The plaintiff argues that the case is not about whether it and other similarly situated hospitals could have afforded to pay more for the hospital beds that were purchased or rented from Hill-Rom; it is about whether they paid more than they should have had to pay had Hill-Rom not engaged in the conduct alleged by the plaintiff. The plaintiff further argues that even if the defendants' position was correct about the

11

relevance of the plaintiff's financial condition to the claims at issue in this case, documents showing the plaintiff's budget forecasts and future development plans cannot provide information concerning the affordability of hospital beds in the past (pl. resp. m. to compel 5). The plaintiff further notes that it has already produced substantial detailed information reflecting its financial condition, including financial statements covering the period from 1988 through 1997 and monthly consolidated financial statements covering the period October 1998 through August 2003, as well as minutes from the Finance, Audit, and Compliance Committee of the plaintiff's Board of Directors from January 26, 1999 to January 20, 2005 (pl. resp. m. to compel 7). Lastly, the plaintiff argues that the individual salary information sought by the defendants in request number nine is less probative of its ability to pay higher prices for its beds than the more comprehensive information from the plaintiff's total employee salary costs, information which is included in the financial statements already provided to the defendants.

This court finds that the information sought by the defendants is not relevant to any claim or defense in this case. Furthermore, the plaintiff has already produced substantial detailed information reflecting its financial condition. Accordingly, the defendants' motion to compel is denied.

## **CONCLUSION**

Now, therefore, based on the foregoing,

IT IS ORDERED that:

(1) the plaintiff's motion to compel responses to its first request for production of documents is granted in part and denied in part as set forth above;

(2) the plaintiff's motion to compel responses to its second request for production of documents is granted in part and denied in part as set forth above; and

>    (3)    the defendants' motion to compel responses to its third request for production of documents is denied.

>    IT IS SO ORDERED.

>                                   Bruce H. Hendricks
>                                   United States Magistrate Judge

May 23, 2005

Greenville, South Carolina