

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| SPARTANBURG REGIONAL HEALTH SERVICES DISTRICT, INC. d/b/a Spartanburg Regional Healthcare System, on behalf of themselves and others similarly situated, *et al.*, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 7:03-2141-HFF |
| vs. | § § | |
| HILLENBRAND INDUSTRIES, INC. *et al.*, | § § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

This is a class action seeking recovery for violations of the antitrust statutes. The matter is before the Court on Plaintiffs' motion for an award of attorney fees and reimbursement of expenses. The Court has approved the Settlement and the Settlement Agreement including the administration and consummation of the Settlement Agreement. For the reasons stated below, the Court will grant Plaintiffs' motion for attorney fees and expenses.

**II.    APPLICABLE LAW**

Rule 23(h) of the Federal Rules of Civil Procedure establishes the procedure for awarding attorney fees in a class action:

> **(h) Attorney Fees Award.** In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties as follows:
>
>> **(1) Motion for Award of Attorney Fees.** A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>>
>> **(2) Objections to Motion.** A class member, or a party from whom payment is sought, may object to the motion.
>>
>> **(3) Hearing and Findings.** The court may hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).
>>
>> **(4) Reference to a Special Master or Magistrate Judge.** The court may refer issues related to the amount of the award to a special master or to a magistrate judge as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).

Pursuant to Rule 23, the Court finds that Lead and Co-Class Counsel have provided adequate notice to the settlement class constituting the best notice practicable. Counsel has given class members ample opportunity to object to the fee petitions. Therefore, they have complied in all respects with Rule 23 of the Federal Rules of Civil Procedure.

### III.    DISCUSSION

*A.    Method of Calculating Fee*

Courts generally use one of two methods to assess requests for attorney fees in class action settlements: the percentage-of-recovery method and the lodestar method. *In re Cendant Corp. Prides Litig.,* 243 F.3d 722, 732 (3d Cir. 2001). The majority of courts apply a percentage-of-

recovery framework in a traditional common-fund case in which fees are awarded from the class recovery. Manual for Complex Litigation (Fourth) § 14.121(2004) ("the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases") (internal footnotes omitted). As summarized by the Third Circuit Court of Appeals:

> There are two primary methods for calculating attorney[] fees: the percentage-of-recovery method and the lodestar method. The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure. . . . The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.

*Cendant,* 243 F.3d at 732 (internal citations and quotation omitted). This Court has previously used the percentage-of-recovery method in common-fund cases. *Clark v. Experian Information Solutions, Inc.,* No. 8:00-cv-1217-22, 2004 WL 256433 (D.S.C. Feb. 9, 2004); *Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987); *Central Wesleyan College v. W.R. Grace & Co.,* No. 2:87-1860-8 (D.S.C. Dec. 21, 2001). Although the Fourth Circuit has not mandated the use of a particular method of calculating attorney fees in common-fund cases, it has approved the use of the percentage-of-recovery method. *In re MRRM,* 404 F.3d 863 (4th Cir. 2005); *see also Gibbs v. Blackwelder,* 346 F.2d 943 (4th Cir. 1965). Here, a percentage-of-recovery method is proper due to the risk, complexity, and novelty of this type of litigation.

  B.  *Reasonableness Analysis*

Under the percentage-of-recovery method, the Court must apply factors to determine the reasonableness of the award. *In re Rite Aid Corp. Securities Litig.,* 396 F.3d 294, 301 (3d Cir. 2005). Considering the record, including the facts set forth in Lead and Co-Class Counsels' motion and in

the supporting exhibits and affidavits, the Court finds that the factors set forth in *Gunter v. Ridgewood Energy Co.*, 223 F.3d 190 (3d Cir. 2000) are applicable when determining an attorney fee award.[1] These factors include: (1) the size of the fund created and the number of persons who will benefit; (2) the lack of substantive objections to the settlement terms or fee requests that have been made; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) awards in similar cases.

### 1.     *Size of Recovery and Number of Persons who will Benefit*

The first factor to be considered under the percentage-of-recovery method is the size of the recovery and the number of persons who will benefit from the settlement. Considering Plaintiffs' expert's testimony, the Court finds that this settlement is most likely at the highest end of any expected result and that an award of twenty-five percent is reasonable considering the large class in this case. The Settlement Agreement will benefit all buyers and renters of Defendants' products by implementing pricing restriction guidelines that Defendants must abide by under the Settlement

---

[1] While the Fourth Circuit has not established factors to be considered under the percentage-of-recovery method, it has set forth factors to be considered under the lodestar method. *Barber v. Kimbrell's, Inc.*, 877 F.2d 216, 225 n. 28 (4th Cir. 1978). The *Barber* factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.* Although these are largely in harmony with the factors set forth in *Gunter*, in an abundance of caution, the Court has analyzed the current request applying the twelve *Barber* factors and finds the requested fee reasonable under both the *Barber* and *Gunter* factors.

Agreement. In addition, buyers and renters of Defendants' products during the period from 1990 through February 2, 2006, have a claim on the cash portion of the settlement. Altogether, the settlement will benefit over 6,000 hospitals, 16,200 nursing homes and thousands of individual home users. (Economides Declaration ¶¶ 7-12.) Accordingly, the first factor supports Plaintiffs' request for an award of twenty-five percent.

### 2.     *Lack of Substantive Objections*

The Court next considers any objections to the fee request filed by members of the Settlement Class. Here, only three objections were filed out of 230,000 notices sent to potential class members. Of these objections, all have been withdrawn except for the objection made by Triad Hospitals. Triad's objections are made on two grounds: (1) the fee percentage requested in the Settlement Agreement is exorbitant and (2) the fee award should be based only on the cash value of the settlement. (Triad's Resp. to Pl.'s Mot. For Atty's Fees.) The Court finds that this objection has no merit because an attorney fee award of twenty-five percent of the post-opt out settlement value is reasonable based on the other factors considered here and because the achievement of an agreement between Plaintiffs and Defendants has a real, measurable value to the class. (Eble Declaration ¶ 9.)

Additionally, the overall lack of objections from the class supports the reasonableness of the fee request. Given that a substantial portion of the class is composed of sophisticated business entities, this absence of objections to the requested fee award further indicates the reasonableness of the award and the class members' appreciation of Lead Class and Co-Class Counsels' extensive efforts in this litigation. Therefore, the Court finds that the second *Gunter* factor supports Counsels' request for an award of twenty-five percent.

### 3.     *Counsels' Skill and Efficiency*

The third factor assesses whether Counsels' skill and efficiency helped in achieving a settlement. Here, Lead and Co-Class Counsels' skill and efficiency satisfies the third factor under *Gunter*. Lead and Co-Class Counsel have been involved with this case for over two and a half years during which time they expended significant time and expense. The efforts undertaken included extensive investigation of the claim, substantial fact and expert discovery, significant motion practice and briefing, and various settlement negotiations. Given that Defendants strongly defended the legality of their longstanding procedures of price bundling products and incurred substantial costs to implement and protect these procedures, the Court concludes that Lead and Co-Class Counsel demonstrated substantial skill and ability in obtaining a Settlement Agreement. (Miller Declaration ¶ 20.) Obtaining this Settlement Agreement was arguably the most efficient remedy for the class, especially given the potential length of trial and appellate process for the claims here. Thus, the Court finds that Counsels' skill and efficiency satisfies the third *Gunter* factor.

### 4.     *Complexity and Duration of the Case*

The fourth factor of the *Gunter* analysis requires the Court to examine the complexity and duration of the case. This was an extremely complex case, involving legal and economic issues that are both novel and difficult. (Elhauge Declaration ¶ 9.)   As with any class action suit, particularly actions seeking to certify a nationwide class, these actions were procedurally complex and presented case management challenges. Consequently, Lead and Co-Class Counsel necessarily invested significant amounts of time, labor, and skill in bringing this case to settlement. As previously noted, the case has been actively litigated for over two and a half years, and Lead and Co-Class Counsel have filed motions dealing with class certification, complicated discovery disputes, and the novelty

of litigating a monopoly bundling class action suit. Moreover, according to both Lead and Co-Class Counsels' representations, they have deposed numerous witnesses, consulted many experts in the field, successfully opposed numerous motions, propounded and responded to document requests, analyzed many documents, and prepared more than forty briefs. (Pl.'s Mem. Supp. Atty. Fees 7.) In addition, Lead and Co-Class Counsel also have certain ongoing obligations under the terms of the Settlement Agreement. Accordingly, the fourth factor supports Counsels' request for an award of twenty-five percent.

### 5. *Risk of Nonpayment*

In applying the fifth factor under *Gunter*, the Court considers the risk of nonpayment assumed by Lead and Co-Class Counsel when making the determination to pursue this case. Lead and Co-Class Counsels' substantial investment of time in pursuing this case was, at all times, made at the risk of receiving no compensation. The Court again recognizes that Counsel have been actively involved in this case for over two and a half years, during which time they assumed a high degree of risk of nonpayment due to the difficulty and novelty associated with this case. Without some benefit or incentive to undertake such risks, competent counsel would not be attracted to handle cases of this nature. *In re Microstrategy, Inc. Securities Litig.,* 172 F. Supp 2d 778, 788 (E.D. Va. 2001). By agreeing to move forward in the case, Lead and Co-Class Counsel knew that they would be opposed by well-funded Defendants with strong motivations to defend their practices. Due to the substantial risk of nonpayment, Counsel had difficulty obtaining other practitioners to assist in their claim against Defendants. (Miller Declaration ¶ 23 ("[S]everal firms rejected an invitation to join the team on the ground that the case was too risky to warrant the expenditure of time and money that would be required to take on Hill-Rom and the Boies Schiller firm.").)

Lead and Co-Class Counsel undertook this litigation on a wholly contingent fee basis, and thus Counsel have not been compensated for the amount of time and expense involved in pursuing this case for more than two and a half years. Counsel, in their original notice, requested an award of attorney fees of up to thirty-three percent of the total value of the settlement. (Pl.'s Mem. Supp. Atty. Fees 2.) Considering the risk of nonpayment and the fact that Counsel are requesting a fee percentage that is less than initially noticed, this Court finds that a requested fee award of twenty-five percent of the post-opt out settlement value is both fair and reasonable. The Court also notes that, had this case not settled, Lead and Co-Class Counsel would have had to prevail at every stage of the litigation to achieve a favorable judgment. At the time of the settlement, the Class would have had to overcome four legal barriers: class certification, summary judgment, trial, and, most likely, an appeal. Thus, the risk of nonpayment was real and supports the requested fee award.

  6.    *Amount of Time Devoted*

The sixth factor of the *Gunter* analysis requires that proper weight be given to the amount of time dedicated to a particular cause of action. As demonstrated by Plaintiffs, Lead and Co-Class Counsel have collectively invested 39,347 hours of time on this case and have incurred $4,478,792 in expenses. (Pl.'s Mem. Supp. Atty. Fees 7.) The issues involved in this case are novel and difficult, presenting both factual and legal complexities. Consequently, Lead and Co-Class Counsel invested significant amounts of time, labor, and skill in bringing the case to the point of settlement. The amount of hours that Lead and Co-Class Counsel spent on this case necessarily precluded Counsel from working on other matters and thus imposed substantial and significant opportunity costs. (Eble Declaration ¶ 9 ("Figuring attorneys bill approximately 2,000 [hours per] year on the average, the work in this case exceeds in excess of 19 attorney-billing-years of time. Certainly this

represents a major commitment by the lawyers involved.").)  Accordingly, the Court finds that Counsels' amount of time devoted to this case is consistent with a fee award of twenty-five percent.

### 7. Awards in Similar Cases

The Court next turns to a comparison of attorney fee awards in similar cases.  Courts have awarded attorney fees in amounts ranging from twenty percent to thirty-three percent of the common fund.  *Shaw v. Toshiba Amer. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery.") *quoted in* (Conte Declaration ¶17.)  In "mega-fund" antitrust cases (more than $100 million), a majority of circuit courts award between twenty and thirty percent of the fund, with an average of 25.03 percent in recently reported mega-fund antitrust cases.  (Miller Declaration ¶¶ 31, 32.)  The Court notes that Ms. Conte opined in this case that an award of twenty-five percent of the total value including the non-cash portion of the settlement is in accordance with similar awards.  Based on Lead and Co-Class Counsels' motions, supporting exhibits and affidavits, and the expert testimony presented, the Court concludes that an attorney fee award of twenty-five percent of the post-opt out settlement value is consistent with awards in similar cases.  Thus, Counsels' request satisfies the seventh factor of *Gunter*.

### C. Cross-Check Against Lodestar Analysis

To ensure the reasonableness of an award under the percentage-of-recovery method, courts often compare the amount to be awarded under the percentage-of-recovery method with the amount that would be awarded under the lodestar method.  *Cendant,* 243 F.3d at 732; *see also In re*

*Microstrategy, Inc. Secs. Litig.,* 172 F. Supp 2d 778.[2] Here, based on a lodestar rate of $500 per hour, the lodestar analysis results in a multiplier slightly above six. (Conte Declaration ¶ 10.) Although this multiplier is at the high end of the acceptable range, it is justified by the exceptional results achieved in this case. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 899 (1984) (stating an upward adjustment is justified when success is "exceptional"); *Boston and Maine Corp. v. Sheehan, Phinney, Bass, & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (holding that an attorney fee award may be adjusted up or down based on, *inter alia*, results obtained). As expert testimony reveals, the cash portion of the settlement alone, $337,500,000, is at "the high end of the spectrum for cash awards paid in any antitrust case in the history of American jurisprudence." (Conte Declaration ¶ 14.) With the additional value of the non-cash portion of the settlement, the total recovery for the class is in excess of $400 million.[3] In a case with an untested, novel legal theory, a recovery of this size is exceptional. Finally, the lodestar rate of $500/hour is "well within the range of rates that have been used in lodestar determinations for experienced, highly capable attorneys in challenging and specialized litigation." (Conte Declaration ¶ 12.) Accordingly, a lodestar cross-check indicates that an attorney fee award of twenty-five percent is not excessive.

---

[2] The Court in *In re Microstrategy, Inc. Secs. Litig.* states "Under the lodestar method of calculating attorney fee awards in common fund cases, the trial court must first determine the hours reasonably expended by counsel that created, protected, or preserved the fund. Then, the number of compensable hours is multiplied by a reasonable hourly rate for the attorney services to produce a lodestar figure. Finally, the lodestar figure may then be increased or decreased based on an assessment of a variety of factors relating to the nature of the case, the market for such legal services, and the result achieved."

[3] Triad has suggested that the non-cash portion of the settlement should be excluded from the calculation of the attorney fee award. This argument lacks merit. As the class representative testified, the non-cash portion of the settlement agreement has real value to the settlement class. (Tr. Hrg. 17-19.) In addition, expert testimony estimates the value of the non-cash portion to be $152.3 million. (Economides Declaration ¶ 6.)

### III.    CONCLUSION

Pursuant to Rule 23(h), the Court hereby approves Plaintiffs' request for an attorney fee award to Lead Class Counsel, Felder & McGee LLP, Ball & Scott, and Akin Gump Strauss Hauer & Feld LLP, and Co-Class Counsel, McGowan Hood Felder & Johnson and Johnson, Toal & Battiste, in the amount of twenty-five percent of the post-opt out settlement value to the class or $117,157,800.  Further, the Court approves the reimbursement of Class Counsels' expenses through May 22, 2006 in the amount of $4,478,792.  This request is less than the original request in the notice approved by the Court, in which Class Counsel advised it would seek up to thirty-three percent of the value of the settlement.  The Court finds that an attorney fee award of twenty-five percent of the post-opt-out settlement value to the class is fair, reasonable and adequate, and in the best interests of the Settlement Class.

Therefore, it is the judgment of this Court that Plaintiffs' Motion for Approval of Attorney Fees and Expenses be **GRANTED**.

**IT IS SO ORDERED.**

Signed this 15th day of August, 2006, in Spartanburg, South Carolina.

                                                              s/Henry F. Floyd
                                                              UNITED STATES DISTRICT JUDGE