**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Spartanburg Regional Health Services District, Inc. d/b/a Spartanburg Regional Healthcare System, Spartanburg Regional Medical Center, Spartanburg Hospital for Restorative Care, and B.J. Workman Memorial Hospital, on behalf of themselves and others similarly situated, )))))))) | |
| Plaintiff, ) | C.A. No. 7:03-2141-HFF |
| vs. ))) | |
| Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc., ))) | |
| Defendants. ) | |

**CLASS COUNSEL'S REPORT AND RECOMMENDATION ON THE DISPOSITION OF CLASS MEMBER CHALLENGES TO THE SETTLEMENT ADMINISTRATOR'S DETERMINATION OF ELIGIBLE PURCHASES AND RENTALS**

Spartanburg Regional Health Services District, Inc. ("Spartanburg"), d/b/a Spartanburg Regional Healthcare System, Spartanburg Regional Medical Center, Spartanburg Hospital for Restorative Care, and B.J. Workman Memorial Hospital, through Class Counsel, and without objection from Defendants Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc., submits this Report and Recommendation with respect to sixteen class members' challenges of the Settlement Administrator's determination of the amount of their eligible purchases and rentals of Hill-Rom products to be used in computing their *pro rata* share of the Settlement Fund.

Given the tens of thousands of claims handled by the Settlement Administrator the ("Garden City Group"), and the hundreds of thousands of pages of documentation reviewed during the claims review process, some number of appeals are to be expected. Garden City

prepared more than 90,000 personalized claim forms, approximately 28,000 of which were returned as filed claims. Nearly 6,000 of those claims were deficient in some manner, and more than 500 claimants disputed the eligible amount of their purchases and rentals. A total of more than $8 billion in eligible purchases and rentals were approved for use in the *pro rata* calculation. Many of those with disputed claims submitted substantial documentation for their additional claimed purchases and rentals, which in some cases was hundreds of pages long. The Settlement Administrator painstakingly reviewed all of that documentation to ensure as much as reasonably possible that class members received full credit for all their eligible purchases and rentals, and that claims were not duplicated. The fact that only sixteen appeals were filed, out of 23,792 approved claims processed by Garden City, indicates that the claims process was well-executed.

For the reasons explained below, Class Counsel recommends that the Court grant the appeal of six class members, deny as moot five of the claims (because the Settlement Administrator has previously approved their claim in the full amount requested in the appeal), deny four of the claims, and grant in part and deny in part one claim.[1] Should the Court accept Class Counsel's recommendation, the *pro rata* shares of the settlement funds identified on the CD-ROM submitted to the Court on April 2, 2007 will need to be recalculated.[2]

---

[1] It has now been seventeen days since the deadline to challenge the Settlement Administrator's claims determination and ten days since the last such challenge was filed. Class Counsel has made its recommendations to the Court with respect to each challenge based on the substance of the issues raised and without regard to the timeliness of any such challenge.

[2] If the Court accepts all of Class Counsel's recommendations as to the disposition of these challenges, it would increase the total amount of eligible purchases and rentals of Hill-Rom products of all claimants with an approved claim by $10,325,165.58. *See* Affidavit of Richard Senzer, at ¶ 2, attached hereto as Ex. A. That amount represents an increase of slightly more than one-tenth of one percent of the more than $8 billion in such purchases and rentals previously approved. Recalculation of each class members' *pro rata* share of the settlement fund would likewise be affected to the same degree, *i.e.* the amounts on the CD-ROM submitted to the Court on April 2, 2007 would be reduced by the same percentage.

**A.    SUMMARY OF RECOMMENDATIONS**

**1.    Appeals that Class Counsel Recommends to be Granted**

Class Counsel believes that the Court should grant six of the appeals, and grant in part and deny in part one additional appeal. In one case, denial of the additional amount was based on the Settlement Administrator's clerical error in reading the supporting documentation that the product was purchased within the class period.[3] In two cases, Garden City was unable to verify that the supporting documentation showed the purchase of a Hill-Rom product, but Class Counsel's further investigation confirms that the product at issue was a Hill-Rom product. Another appeal which Class Counsel recommends to be granted involves the claimant diligently looking for documentation of an additional purchase and locating it only a week after the claims review process ended. The final appeal that Class Counsel recommends be approved involves a $10 million claim that was not filed by the claimant, but which was overlooked by the Settlement Administrator when the claimant brought it to the Settlement Administrator's attention during the deficiency review process. Absent that claims handling error the claim would have been approved.[4]

**2.    Appeals that Class Counsel Believes to be Moot**

Class Counsel believes that five of the appeals are moot in that the Settlement Administrator's computation of those claimants' eligible purchases and rentals matches what the claimant believes to be the correct amount. In three of these five cases, for example, the

---

[3] *See* Affidavit of Richard Senzer, Ex. A., noting that the Settlement Administrator has reviewed the facts set forth in this Report and Recommendation, and agrees with their accuracy.

[4] The six appeals that Class Counsel recommend that the Court grant are: (1) Docket no. 400 (Lewis Ullman); (2) Docket no. 401 (Estate of Kristen Thompson); (3) Docket no. 402 (Estate of Pearl Nichols); (4) Docket no. 409 (Dr. Wilbur Lewis); (5) Docket no. 412 (Little Sisters of the Poor); and (6) Docket no. 414 (Rancho Los Amigos). Class Counsel recommends that the Court grant in part and deny in part Docket no. 405 (Blue Cross and Blue Shield).

3

Settlement Administrator, through a claims processing error, incorrectly believed that the class member was claiming a duplicate amounts when no such duplicate claim was being made. Two of these five involved a clerical error made by the Settlement Administrator in failing to delete a deficiency code from the claimant's file after the deficiency was resolved (causing a claim denial letter to be issued when one was not necessary). Because the CD-ROM provided to the Court on April 2, 2007 provides for payment of these class members' *pro rata* share of the fund to be calculated on the full amount claimed in their appeal, these five appeals should be dismissed as moot.[5]

### 3. Appeals that Class Counsel Recommends be Denied

Class Counsel recommends that the Court deny five of the appeals. In four of those cases, the documentation submitted to the Settlement Administrator by the claimants failed to show that they had either purchased or rented (or paid for) a Hill-Rom product, or failed to show that such purchases were not included in an already approved amount of eligible purchases or rentals. For example, one claimant submitted documentation showing that his mother had purchased a Craftmatic Adjustable bed, which is not a Hill-Rom product covered by the settlement. Another claimant provided documentation showing that either Medicare or her insurance company had paid in full for her rental of a Hill-Rom bed.[6]

---

[5] The five appeals that Class Counsel believe to be moot are: (1) Docket no. 404 (Estate of Elizabeth Johnson); (2) Docket no. 407 (Shirley Fishbone); (3) Docket no. 408 (Mary Fischer); (4) Docket no. 411 (Marlene Garfin); and (5) Docket no. 415 (Joseph Fornaris).

[6] The four appeals that Class Counsel recommends be denied are: (1) Docket no. 403 (Estate of Dagny Kruse); (2) Docket no. 406 (Seacoast Medical Center); (3) Docket no. 410 (June Quinn); and (4) Docket no. 416 (FELRA Health and Welfare Fund).

4

**B.    CLASS COUNSEL'S RECOMMENDATIONS**

The specific facts and Class Counsel's recommendation with respect to each of the sixteen appeals are as follows.  Each appeal is listed in order of the docket number under which their appeal was filed by the clerk:

**1.    Docket No. 400, (Louis J. Ullman)**.  *The Settlement Administrator's Determination*:  The Settlement Administrator approved Mr. Ullman's claim for $150 and denied his claim for an additional $4,975 in eligible purchases, based on Ullman's purchase of a King Winborn bed from Sleep Options, Inc.

*Class Counsel's Recommendation*:    Attached to Mr. Ullman's claim form was a credit card receipt from Sleep Options, Inc. in Cincinnati, Ohio.  The Settlement Administrator sent Ullman a deficiency letter on October 27, 2006 stating that the claim involved a duplicate transaction.  Ullman responded to the deficiency notice by stating that he already had provided the documentation of the transaction with the credit card receipt.  The Settlement Administrator's final decision was based on the credit card receipt being inadequate documentation of a purchase from Hill-Rom.  Class counsel has reviewed Ullman's documentation and verified that Sleep Options, Inc. was owned by Hill-Rom and served as a seller of Hill-Rom products.  <u>Class Counsel recommends that the Court grant Ullman's appeal because his documentation shows that he did in fact purchase and pay for an eligible Hill-Rom product</u>.

**2.    Docket No. 401,** (**Estate of Kristen Thompson, by Joyce Thompson, Administrator).**  *The Settlement Administrator's Determination*:  GCG approved Thompson's claim for $39,531.56 in eligible purchases and rentals, but denied a claim for an additional $73.50 in eligible purchases based on its review of documentation indicating that the expense was incurred in 2006, outside the class period.

5

*Class Counsel's Recommendation*: Thompson's appeal asserts that the expense was incurred in 1996 rather than 2006, and that the Settlement Administrator misread the documentation submitted with the claim. Further review confirms that the disputed portion of the claim was incurred during the class period and should be included in her approved claim amount. Class Counsel recommends that the Court grant Ms. Thompson's appeal.

3. **Docket No. 402, (Estate of Pearl Nichols, by Judy Shaver, Administrator).**

*The Settlement Administrator's Determination*: The Settlement Administrator denied Nichols' claim for $2,420.28 in its entirety based on inadequate documentation because the Settlement Administrator could not verify that the product rented by the claimant was a Hill-Rom product.

*Class Counsel's Recommendation*: Ms. Nichols' claim, which was submitted using a blank claim form obtained from GCG, was for monthly rental payments made for a hospital bed that was rented from Genesys Medical Equipment Services. Included in Ms. Nichols' supporting documentation was an agreement between Ms. Nichols and Hill-Rom Home Care describing the rental of a Hill-Rom bed for Ms. Nichols through Genesys Medical Supply. Class Counsel believes that the documentation Nichols provided indicates Nichols was indeed a Hill-Rom customer and that she paid for the rental of a covered Hill-Rom product. Accordingly, Class Counsel recommends that the Court grant Ms. Nichols' appeal.

4. **Docket No. 403, (Estate of Dagny Kruse, by Esther Hagen, Administrator).**

*The Settlement Administrator's Determination*: The Settlement Administrator approved Kruse's claim for $828.46 and denied her claim for an additional $309.00 for lack of documentation.

*Class Counsel's Recommendation*: Ms. Hagen requested a blank claim form from the Settlement Administrator (Hill-Rom's records do not indicate that her mother, Ms. Kruse, was ever billed for any Hill-Rom products) which she used to submit a claim for $2,234.25 on

6

October 30, 2006. Shortly thereafter, she submitted an amended claim for $3,421.81. The documentation provided by Ms. Hagen to the Settlement Administrator indicates that her claim amounts were based on payments that were made either by Medicare or a third party insurer, AARP Group Health Insurance, to Hill-Rom for the rental of a Hill-Rom pressure mattress. Hagen, as administrator of Ms. Kruse's estate submitted a letter on February 28, 2006 in which she confirmed that Medicare or AARP paid for Ms. Kruse's Hill-Rom rental. Ms. Kruse, accordingly cannot properly document the payment of any additional amount of eligible purchases or rentals. <u>Class counsel recommends that the Court deny Kruse's appeal for any additional claimed amount of eligible purchases and rentals to be used in the calculation of her *pro rata* distribution</u>.

**5.     Docket No. 404, (Estate of Elizabeth Johnson, by Joseph Wrozina, Administrator).** *The Settlement Administrator's Determination*: The Settlement Administrator approved the Johnson Estate's claim for $7,500. Mr. Wrozina, the Estate's administrator, appears to have misread the Settlement Administrator's Final Decision letter to mean that the Settlement Administrator was denying the claim; instead, the Final Decision letter denied what the Settlement Administrator believed to be a duplicate claim for an additional $7,500.

*Class Counsel's Recommendation*: When Mr. Wrozina submitted the preprinted claim form showing $7,500 in rentals of a Hill-Rom product, he mistakenly believed that he needed to submit a copy of his cancelled check documenting his purchase. No such documentation was necessary, however, because the record of that payment was already in Hill-Rom's transactional database. The Settlement Administrator then mistakenly processed the claim to show that Mr. Wrozina was claiming both the $7,500 preprinted amount, plus an additional $7,500, which the Settlement Administrator characterized as an improper duplicate transaction. The Settlement

7

Administrator then generated a deficiency notice based on the mistaken belief that Mr. Wrozina was claiming $15,000 in eligible purchases. Neither the deficiency notice nor the Final Decision letter should have been sent because the Settlement Administrator has approved Mr. Wrozina's original claim for payment based on eligible purchases of $7,500. <u>Class counsel recommends that the Court deny the appeal as moot. The CD-ROM submitted to the Court on April 2, 2006 provides for the calculation of his *pro rata* distribution based on the full amount of the eligible purchases claimed by Mr. Wrozina.</u>

      **6.**    **Docket No. 405, (Blue Cross of California).** *The Settlement Administrator's Determination*: The Settlement Administrator approved Blue Cross' claim in the amount of $12,247,428.18, which represented the consolidation of 538 separate preprinted claim forms. Excluded from that consolidation were five additional claims totaling $89,624.18 in eligible purchases that Blue Cross did not ask to be included in the consolidated claim until after the claims review process was completed.[7] Blue Cross has appealed the decision not to include those five untimely claims, and sought approval to include any additional claim forms discovered in the future.

      *Class Counsel's Recommendation*: Because of the large number of Blue Cross claimants (based on the many separate "bill to" addresses in Hill-Rom's transaction database), Blue Cross provided the Settlement Administrator with a spreadsheet listing all of its facilities or addresses that it wanted to include in a consolidated claim. The five claims that are the subject of this appeal *were not included* on Blue Cross' consolidation list. The process, however, worked as

---

[7] The five denied claims for Blue Cross of California facilities include: (1) Blue Cross (Claim No. 1053163, $13,134.26), (2) Blue Cross of California (H/C) (Claim No. 1053322, $33,393.35), (3) Blue Cross (HC) (Claim No. 1070845, $31,889.94), (4) MDB-BD of CA (Claim No. 1142398, $77.07), and (5) Blue Cross of Calf (HC) (Claim No. 01204026, $11,129.56).

designed.  In fact, the claim forms generated for those five claims were received by Blue Cross and returned to the Settlement Administrator without being signed or filled out.  Instead, Blue Cross mistook the claim forms for patient requests for insurance reimbursements, *and denied them*.  Because these claim forms were returned, but not executed and accepted as accurate, the Settlement Administrator generated a deficiency notice for each.  When Blue Cross failed to cure those deficiencies (as with the claim forms, the deficiency notices were returned unsigned to the Settlement Administrator along with a patient information request), the Settlement Administrator issued a Final Decision denying the claims.

Although Blue Cross failed to submit these five claim forms to the Settlement Administrator properly filled out, and failed to cure the deficiencies despite multiple opportunities to do so, since these claim forms contain preprinted transactions listed in Hill-Rom's database, there is no doubt that Blue Cross was in fact billed for these purchases.  Class Counsel believes that Blue Cross' *pro rata* share of the settlement fund should be computed by including the eligible purchases and rentals from these five claim forms.  However, for the sake of finality, to the extent that Blue Cross' appeal can be construed to cover any future discovered claim forms, the appeal should be denied as to such additional claims.  Accordingly, Class Counsel recommends that the appeal be granted in part and denied in part, and that the amount of Blue Cross' eligible purchases and rentals be increased by $89,624.18.

**7.     Docket No. 406,  Loris Healthcare System for Seacoast Medical Center.**  *The Settlement Administrator's Determination*:  The Settlement Administrator denied (for lack of documentation) Loris Healthcare System's claim for $3,224.30 in additional eligible purchases claimed for Loris' facility at Seacoast Medical Center, but approved claims for two other Loris facilities that total approximately $1,592,236.

9

*Class Counsel's Recommendation*:  Loris submitted a pre-printed claim form for Loris Community Hospital and Loris Extended Care Center and requested a blank claim form for the Seacoast facility (since Hill-Rom's transaction records did not show any shipments to, or purchases by, Seacoast).  Loris' claim form for Seacoast claimed purchases in the amount of $3,224.30, but failed to supply any documentation for those purchases, such as copies of the purchase orders.  Without such documentation the Settlement Administrator was unable to verify that the purchases claimed by Loris for Seacoast were for Hill-Rom products or if so that they were not duplicates of products billed to Loris that might have been included in the Loris Healthcare System claim.

The Settlement Administrator generated two deficiency forms, one to Loris Healthcare System asking for documentation with respect to the name change from Loris Community Hospital to Loris Healthcare System (to verify that the claimant is the same entity reflected in Hill-Rom's records), and one to Seacoast asking for documentation for Seacoast's claimed purchases.  Loris satisfied the deficiency with respect to the name change, but failed to respond to the request for documentation for the Seacoast purchases.  Review of Loris' appeal indicates that Loris believes that Seacoast's claim was denied over continuing confusion about Seacoast's relationship to Loris, which is not the case.  <u>Because Loris has never submitted any documentation supporting the claimed additional transactions submitted for Seacoast, Class Counsel recommends that the Court deny the appeal.</u>

**8.     Docket No. 407,  Shirley Fishbone, by Debbie Gordon, Administrator.**  *The Settlement Administrator's Determination*:  The Settlement Administrator approved Fishbone's claim for $2,500 and denied what it mistakenly believed to be a claim for an additional $2,500.

*Class Counsel's Recommendation*:  As with the Johnson Estate claim described above, Ms. Gordon submitted a copy of her check documenting her purchase along with her pre-printed claim form.  Due to a clerical error (Ms. Gordon's claim form included a check in the box indicating that she did not dispute the amount of transactions indicated in Hill-Rom's records), the Settlement Administrator processed the check copy as a claim for an additional $2,500 in eligible purchases.  Ms. Gordon's appeal makes clear that she is not making such a claim; thus the Settlement Administrator's denial of that additional amount is in error and the appeal is unnecessary.  Fishbone is entitled to a *pro rata* share of the settlement proceeds calculated upon the $2,500 purchase as indicated by both Hill-Rom and the claimant's records.  <u>Class counsel recommends that the Court deny the appeal as moot.  The CD-ROM submitted to the Court on April 2, 2006 provides for her *pro rata* payment to be calculated upon the full amount of eligible purchases claimed by Ms. Gordon.</u>

      **9.**      **Docket No. 408,  Mary Fischer.**  *The Settlement Administrator's Determination*: The Settlement Administrator approved Fischer's claim for $542.18 which appears to include all transactions claimed by Ms. Fischer.  The Settlement Administrator's Final Decision letter denied claims that appear to have been erroneously characterized as duplicates or which are undocumented, but for which she was actually given credit.

    *Class Counsel's Recommendation*:  Ms. Fischer submitted a claim form that included $191.36 in preprinted transactions (based on information in Hill-Rom's database) and also claimed other transactions amounting to an additional $382.71.  In support of that additional amount, Ms. Fischer submitted documentation showing the other transactions, some of which were also written in on the space provided on the claim form.  Those that were written on the form were erroneously considered to be duplicates.  As Ms. Fischer indicates in her appeal, the

11

additional transactions she claimed were based on equipment rentals from Advanced Respiratory, a company Hill-Rom acquired, during the period prior to Advanced Respiratory's sales information being integrated into Hill-Rom's sales database. Ms. Fischer was given credit for all of the additional $382.71 in transactions she claimed, except for one rental charge for $31.89 incurred in November 2004, which was already included in the preprinted amount of $191.36. (Advanced Respiratory's transactions were integrated into Hill-Rom's database beginning in November 2004.) <u>Class counsel recommends that the Court deny the appeal as moot. The CD-ROM submitted to the Court on April 2, 2006 provides for her *pro rata* distribution to be calculated upon the full amount of eligible purchases or rentals claimed by Ms. Fischer.</u>

**10.     Docket No. 409, Estate of Dr. Wilbur Lewis, by Gladys Lewis, Executor.** *The Settlement Administrator's Determination*: The Settlement Administrator approved Lewis' claim for $172.68 and denied a claim for additional $7,200 related to a purchase of a Hill-Rom bed and scale. (Ms. Lewis' claim form also claimed an additional $580 in sales tax which cannot be included in the claim.)

*Class Counsel's Recommendation*: The approved amount of $172.68 listed in Hill-Rom's records was described as service parts. The Settlement Administrator sent a deficiency notice to Lewis stating that the two additional transactions were ineligible due to inadequate documentation. The documentation Lewis submitted with her claim was based on her own computer records and included the type of Hill-Rom bed purchased, the model number, its serial number and the cost. Ms. Lewis' claim also noted that she was attempting to obtain the original documentation from the nursing home to which she donated the bed after her husband's passing. In response to a deficiency letter, she indicated to the Settlement Administrator that she was attempting to obtain records from Hill-Rom. Neither of those attempts were successful. Class

12

Counsel believes that Ms. Lewis' computer records constitute the best evidence of her purchase and would be admissible in court under Federal Rule of Evidence 1004 as other evidence of the contents of a writing.  <u>Accordingly, Class Counsel recommends that the Court grant the appeal to approve an additional $7,200 in eligible purchases be included in Mr. Lewis' claim.</u>

**11.    Docket No. 410,  June Quinn.**  <u>*The Settlement Administrator's Determination*</u>: The Settlement Administrator approved Quinn's claim for $225.00 and denied her claim for an additional $3,615 based on inadequate documentation that the purchase was of a Hill-Rom product covered by the settlement.

<u>*Class Counsel's Recommendation*</u>:  Quinn submitted a claim form that included the $225.00 rental listed in Hill-Rom's records, but disputed the amount, claiming an additional $3,831.90 for the purchase of a Craftmatic Adjustable bed.  (The $3,831.90 claim included $216.90 in sales tax and a $195 delivery charge which cannot be included in the claim, thus the actual claim amount is $3,615.)  Quinn provided documentation for the Craftmatic bed purchase with her claim.  In response to a deficiency notice based on inadequate documentation (which Quinn interpreted to mean that the documentation was illegible), Ms. Quinn's son, Robert Quinn, forwarded another copy of the same documentation.  Her claim indicated that she, in fact, purchased a Craftmatic Adjustable bed, which is not a Hill-Rom product covered by the settlement.  Hill-Rom's rental records do indicate that Ms. Quinn was shipped a Hill-Rom bed that was rented for her.  Those records indicate, however, that Hill-Rom billed a third party, Mercy Care Center, in the amount of $2,816 for most of the cost of that equipment.  The records also indicate that Ms. Quinn was billed $225 in rental charges, which is the basis for her approved claim.  Accordingly, Ms. Quinn cannot properly document the payment of any

13

additional amount of eligible purchases or rentals.  Class Counsel recommends that the Court deny Ms. Quinn's appeal.

12.     **Docket No. 411,  Marlene Garfin.**  *The Settlement Administrator's Determination*:  The Settlement Administrator approved Garfin's consolidated claim for $9,297.93.  The Settlement Administrator's denial of an earlier undocumented claim made by Ms. Garfin appears to have been in error due to the lateness in the process in which Ms. Garfin's consolidated claim was approved.

*Class Counsel's Recommendation*:  Ms. Garfin submitted a claim form to the Settlement Administrator in October 2006 based on $1,511.00 in transactions that the Settlement Administrator located in Hill-Rom's database.  On October 16, 2006, Ms. Garfin submitted an amended claim based on an additional purchase of a bed for $9,000 when she lived at a different address.  Because the additional claim included no documentation, a deficiency letter was generated.  Based on additional information submitted by Ms. Garfin, a consolidated claim form was prepared and sent to Ms. Garfin.  Ms. Garfin signed the form, accepted the $9,297.93 transaction amount as correct and submitted it to the Settlement Administrator on March 23, 2007.  Through a clerical error, however, the deficiency code was not removed from her claim at that time.  Class Counsel recommends that the Court deny the appeal as moot.  The CD-ROM submitted to the Court on April 2, 2006 provides for her *pro rata* distribution to be calculated upon the full amount of eligible purchases claimed by Ms. Garfin.

13.     **Docket No. 412,  Little Sisters of the Poor.**  *The Settlement Administrator's Determination*:  The Settlement Administrator approved the Little Sisters' claim for $75,000 and denied their claim for an additional $76,486.72 for lack of documentation.

14

*Class Counsel's Recommendation*:  The Little Sisters of the Poor requested a blank claim form from the Settlement Administrator and filed a timely claim for $151,486.89.  The claim included no documentation, however, and thus was flagged as deficient by the Settlement Administrator.  (The Settlement Administrator's records reflect that a regular claim form in the amount of $139,918, based on Hill-Rom's sales database, was mailed to the Jean Jugan Residence, a nursing facility operated by the Little Sisters of the Poor, at the same address listed on the Little Sisters' blank claim form, but that claim form was never returned to the Settlement Administrator.)  In response to the deficiency, the Little Sisters were able to produce a copy of a cancelled check for some of the claimed transactions, but not for others.  Based on that documentation, the Settlement Administrator approved a partial claim in the amount of $75,000 for the Little Sisters.

The Little Sisters have now provided documentation in the form of copies of checks and Hill-Rom invoices to support their remaining claims.  Had that documentation been provided two weeks earlier, before the Settlement Administrator completed the claims processing, the claim would have been approved for the full amount.  Class Counsel believes that the Little Sisters diligently attempted to resolve this deficiency and have now done so.  <u>Accordingly, Class Counsel recommends that the appeal be granted to include an additional $76,486.72 in eligible purchases for the Little Sisters of the Poor's claim.</u>

**14.     Docket No. 414,  Rancho Los Amigos National Rehabilitation Center.** *The Settlement Administrator's Determination*:  The Settlement Administrator approved a claim in the amount of $762,871.36.  The County of Los Angeles, California (the owner of Los Amigos) claims that their *pro rata* share of the settlement fund should be based on more than $10,000,000 in eligible purchases.

*Class Counsel's Recommendation*:  The Settlement Administrator generated three claim forms for Rancho Los Amigos that showed preprinted transaction amounts, one for $1,596.43 in transactions (claim number 01106891), a second (with a slightly different address – again based on separate addresses in Hill-Rom's database) that showed $10,045,627 in preprinted transactions (claim number 01057688), and a third that showed $185,000 in preprinted transactions.  Rancho Los Amigos failed to sign and submit either the claim form showing $10 million in purchases (although it did receive the form), or the form with the $185,000 in purchases, but did submit the other claim form with the $1,500 amount.  When that claim was submitted, Rancho Los Amigos disputed the amount of eligible transactions, and claimed an additional $3,476,300 in Hill-Rom purchases and rentals.  Because some of the documentation for those additional transactions was not submitted with the claim form, the Settlement Administrator approved the claim only in the amount of $762,871.  When Rancho Los Amigos did eventually submit sufficient documentation for the full $3.4 million, the Settlement Administrator, through an administrative error, overlooked the submission and failed to credit the claimant as it should have for the full $3.4 million.

In addition, although correspondence from Rancho Los Amigos to the Settlement Administrator mentioned the claim form with the $10 million in preprinted transactions, that too was not accounted for.  Had the claim been handled correctly, the Settlement Administrator would have offered to consolidate the two claims.  The Settlement Administrator has now determined that all of the additional $3.4 million in claimed transactions that were added to the first claim form are duplicative of transactions that were included in the $10 million preprinted amount.  The Settlement Administrator has further determined that had the claim been handled correctly, Rancho Los Amigos would have been entitled to submit a consolidated claim in the

16

amount of $10,233,120.39.  Accordingly, Class Counsel recommends that the appeal be granted and that Los Amigos' *pro rata* share of the settlement fund be computed based on eligible purchases and rentals of $10,233,120.39.

**15.     Docket No. 415,  Joseph Peter Fornaris.**  *The Settlement Administrator's Determination*:  The Settlement Administrator approved a claim submitted by Fornaris for $2,847.78.  The Settlement Administrator's Final Decision letter (which shows that Fornaris' claim was approved in that amount) was issued through a clerical error and should be disregarded.

*Class Counsel's Recommendation*:  The Settlement Administrator prepared and sent Mr. Fornaris two separate claim forms based on preprinted transaction amounts because Hill-Rom's transaction database listed Mr. Fornaris separately based on two different name spellings.  After both claims were submitted by Fornaris (under the same name), a deficiency notice was generated based on the name difference.  Although the deficiency was cleared up, the Settlement Administrator failed to remove the error code from one of the claims, which resulted in the inadvertent denial notice.  In his appeal, Fornaris states that his *pro rata* share of the Settlement proceeds should be based on a claim amount of $2,847.78 (the amount that the Final Decision letter indicates was approved for Mr. Fornaris) and that he had informed the Settlement Administrator that he does not dispute that amount.  Class Counsel recommends the Court deny the appeal as moot.  The CD-ROM submitted to the Court on April 2, 2006 provides for his pro rata distribution to be calculated upon the full amount of eligible purchases claimed by Mr. Fornaris.

**16.     Docket No. 416, Food Employers Labor Relations Association Health and Welfare Fund ("Fund").** *The Settlement Administrator's Determination*: The Settlement Administrator approved a consolidated claim for the Fund in the amount of $18,687.66. The Final Decision letter which triggered the Fund's appeal was issued in error, since the Fund agreed to accept that amount. Despite having previously accepted the figure of $18,687.66, the Fund now "appeals" seeking an additional $25,113.34 for a total claim amount of $43,801.

*Class Counsel's Recommendation*: The Settlement Administrator initially prepared and sent to the Fund three separate claim forms with preprinted transaction amounts based on Hill-Rom's database. The Fund returned these forms to the Settlement Administrator (initially without signing them) claiming additional purchases based on a computer print-out of their records. The computer print-out data, however, did not show payments made to Hill-Rom for Hill-Rom equipment covered by the settlement. Eventually, the Fund requested the Settlement Administrator to prepare a consolidated claim based on the preprinted amount in the three claims. The Fund signed the consolidated claim form and indicated that it did not dispute the amount of the claim, $18,687.66. Due to a clerical error, the Settlement Administrator failed to clear the inadequate documentation deficiency code from the consolidated claim, thus causing the Final Decision letter to be generated.

The Fund's appeal should be denied for several reasons, including: the Fund previously agreed to accept $18,687.66 as the amount of their claim; the Fund has not provided sufficient documentation of additional Hill-Rom purchases; the documentation submitted by the Fund with its appeal (which appears to be different from documentation submitted to the Settlement Administrator) likewise does not document any purchases from Hill-Rom, let alone an additional $25,113.34 (the ambiguous computer print out attached to the appeal appears to show, at most,

18

$5,724 in unexplained expenditures).  <u>Accordingly, Class Counsel recommends the Court deny the Fund's appeal.</u>

                Respectfully submitted,


                <u>/s John G. Felder, Sr.</u>
                John G. Felder, Sr.
                Fed. ID #784
                FELDER & McGEE, LLP
                Post Office Box 346
                St. Matthews, South Carolina 29135
                Telephone: (803) 874-2010
                Facsimile: (803) 655-7167
                johngfelder@sc.rr.com


                      AND

                John G. Felder, Jr.
                Fed. ID #6441
                McGOWAN, HOOD & FELDER, LLC
                1405 Calhoun Street
                Columbia, South Carolina 29201
                Telephone: (803) 779-0100
                Facsimile: (803) 787-0750
                jfelder@mcgowanhood.com

                      AND

                Chad McGowan
                Fed. ID #6620
                McGOWAN, HOOD & FELDER, LLC
                1539 Health Care Drive
                Rock Hill, South Carolina 29732
                Telephone: (803) 327-7800
                Facsimile: (803) 328-5656
                cmcgowan@mcgowanhood.com

                      AND


                I.S. Leevy Johnson
                Fed. ID # 2194
                JOHNSON, TOAL & BATTISTE, PA

Post Office Box 1431
Columbia, South Carolina 29202
Telephone: (803) 252-9700
Facsimile: (803) 252-9102

AND


Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M. Stenerson, Admitted *Pro Hac Vice*
Michael L. Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R. Laurence Macon, Admitted *Pro Hac Vice*
Karen L. Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, TX  78205-3732
Telephone: (210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball, Admitted *Pro Hac Vice*
Thomas S. Scott, Jr., Admitted *Pro Hac Vice*
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee  37902
Telephone: (865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com



Attorneys for the Plaintiff

April 30, 2007.